UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ELMER ARIEL VARELA MARTINEZ,<br><br>Petitioner,<br><br>v.<br><br>WARDEN OF MIAMI CORRECTIONAL FACILITY; TODD M. LYONS, Acting Director of United States Immigration and Customs Enforcement; PAMELA BONDI, Attorney General of the United States; and KRISTI NOEM, Secretary of the United States Department of Homeland Security,<br><br>Respondents. | CAUSE NO. 3:25-CV-1057 DRL-SJF |

## OPINION AND ORDER

Immigration detainee Elmer Ariel Varela Martinez filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, alleging he is unlawfully confined in violation of the laws or Constitution of the United States. Today the court affords the government its statutory election—either to release Mr. Varela Martinez or to conduct a custody redetermination (with or without a hearing) before an immigration judge in accordance with 8 U.S.C. § 1226(a), and only orders a conditional release to the extent the government chooses not to proceed with this custody redetermination.

Mr. Varela Martinez is a 29-year-old citizen of Nicaragua who claims to have entered the United States without inspection around 2019. On November 5, 2025, officers from the United States Immigration and Customs Enforcement (ICE) Indianapolis Fugitive Operations Team were conducting a "targeted enforcement operation to locate" Mr. Varela

Martinez. They proceeded to a residence in Indianapolis, Indiana, and around 7:00 a.m. they saw a male leaving the home who matched Mr. Varela Martinez's description. They executed a stop of his vehicle and asked him for identification. He produced identification bearing his name and was then placed under arrest. Removal proceedings have been initiated against him, and he has petitioned for asylum. He is being held at Miami Correctional Facility (MCF) pending a resolution of the removal proceedings.

After Mr. Varela Martinez's detention by ICE agents, he sought a custody redetermination by the Executive Office for Immigration Review (EOIR). On December 13, 2025, an immigration judge denied his request, citing *In re Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), and concluding that he was statutorily ineligible for bond pursuant to 28 U.S.C. § 1225(b)(2). On December 17, 2025, in lieu of any further administrative review based on what was likely futile, he filed the present petition. He argues that the mandatory detention provision in 8 U.S.C. § 1225(b)(2) does not apply to him because he entered the United States years ago and was residing in Indiana at the time he was apprehended. He argues that there is no statutory authority for the government to detain him, and that his detention also violates Fifth Amendment due process. He asks the court to order that he be released or alternatively provided a bond hearing.

In an order to show cause, the court directed the respondents to address the petition in light of *De Jesús Aguilar v. English*, No. 3:25-CV-898 DRL-SJF, 2025 WL 3280219, 8 (N.D. Ind. Nov. 25, 2025), and subsequent cases, which joined the overwhelming majority of other district courts in concluding that § 1225(b)(2) does not apply to noncitizens unless they are otherwise "seeking admission" within the statute's meaning. *See also Singh v. English*, No.

2

3:25cv962, 2025 WL 3713715 (N.D. Ind. Dec. 23, 2025) ("In short, under § 1225(b)(2), an alien must be an 'applicant for admission,' and the alien must be 'seeking admission,' and an examining immigration officer must determine that this alien 'is not clearly and beyond a doubt entitled to be admitted' for mandatory detention to occur under this subsection."). The parties were allowed to preserve prior arguments from similar habeas petitions and instructed only to brief "what is different or new, not what has been decided, and those issues particular to this petitioner." The respondents subsequently answered the petition (ECF 15), and Mr. Varela Martinez filed a reply in support of his petition (ECF 16).

As a preliminary matter, the court ordered Mr. Varela Martinez to show cause why all respondents other than his current custodian, the Warden, should not be dismissed as improper parties. *See Kholyavskiy v. Achim*, 443 F.3d 946 (7th Cir. 2006). He responds that he does not oppose the dismissal of all respondents other than the Warden. Therefore, these additional parties will be dismissed. For clarity, the court refers to the responding party as the Warden from this point forward.

The Warden (through his federal counsel) repeats his arguments from *Aguilar* and other recent cases that the court lacks jurisdiction over the petition and that Mr. Varela Martinez's detention is warranted by § 1225(b)(2) because he is an "applicant for admission" within the meaning of that statute. These arguments were rejected in *Aguliar* and subsequent decisions in this district, though *Aguilar* has been appealed. *See, e.g., Singh v. English*, No. 3:25cv962, 2025 WL 3713715 (N.D. Ind. Dec. 23, 2025) (Leichty, J.); *Mejia Diaz v. Noem*, No. 3:25cv960, 2025 WL 3640419 (N.D. Ind. Dec. 16, 2025) (Brisco, J.). The court continues to be of the view that jurisdiction is secure insofar as this opinion goes, and that § 1225(b)(2)

cannot reasonably be interpreted in the manner urged by the government. Notably, the Seventh Circuit recently held in deciding a motion for a stay pending appeal that the government was not likely to succeed on the merits of its argument that the mandatory detention provision contained in § 1225(b)(2) applies to individuals who are arrested in the interior of the United States. *See Castanon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025).

The question remains whether there is anything unique here that would warrant a different conclusion than that reached in both *Aguilar* and *Singh*. The court can find none at the start. Indeed, it strikes as curious that the government arrested Mr. Varela Martinez with a warrant and nonetheless tries to classify him outside § 1226, given his particular circumstances. The Warden's own documentation shows that Mr. Varela Martinez had been living in Indiana for years before his arrest by ICE agents. Though he may be an "applicant for admission" within the meaning of § 1225(b)(2), he cannot be said to be "seeking admission" for the same reasons the court articulated in prior cases.

That leads the court to 8 U.S.C. § 1226(a), the "default rule" for detention of noncitizens who are "already present in the United States." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). "On a warrant issued by the Attorney General, an alien may be arrested and detained" while removal proceedings are pending, and the Attorney General "(1) may continue to detain the arrested alien; and (2) may release the alien on (A) bond . . . or (B) conditional parole" until removal proceedings conclude. 8 U.S.C. § 1226(a). The court, as it always does, begins with the plain language of this statute. It is permissive, not mandatory, and it affords an election—either the Attorney General may continue to detain the

4

noncitizen or the Attorney General may pursue a bond hearing (insofar as the limitations in § 1226(c) do not apply of course).

Immigration officials issued a warrant for Mr. Varela Martinez's arrest. Mr. Varela Martinez argues that § 1226 may not apply because the Warden failed to produce sufficient evidence that the warrant was obtained before his arrest; in his view, this entitles him to immediate release. He bears the burden today. *See* 28 U.S.C. § 2241; *see also Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009) ("The burden of proof of showing deprivation of rights leading to unlawful detention [under § 2241] is on the petitioner."); *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011) ("[I]t was error for the District Court to effectively impose on the Government the burden of proving that [petitioner] was *not* 'in custody in violation of the Constitution or laws or treaties of the United States'" under § 2241); *Flores v. Noem*, No. 9:25-CV-00307, 2026 WL 44238, 1 (E.D. Tex. Jan. 2, 2026) ("In a habeas proceeding, the petitioner bears the burden of proof and must demonstrate by a preponderance of the evidence that he is being held unlawfully.").

Mr. Varelas Martinez cites *Zadvydas v. Davis*, 533 U.S. 678 (2001) and *INS v. St. Cyr*, 533 U.S. 289 (2001), for the proposition that the government bears the burden of proving his detention is lawful. He reads these cases too broadly. *Zadvydas* was a post-removal-order case that held that continued detention is conditioned on removal being reasonably foreseeable—a product of federal due process to render the statute constitutional. After a presumptively reasonable six–month period, if a noncitizen demonstrates that there is no significant likelihood of removal in the reasonably foreseeable future, the government "must respond with evidence to rebut that showing." *Zadvydas*, 533 U.S. at 701. Likewise, in

5

*St. Cyr*, the issue was whether a petitioner had become statutorily ineligible for discretionary waiver of removal under 8 U.S.C. § 1182(c) due to his criminal convictions. The Supreme Court declined to find a "retroactive application of ambiguous statutory provisions" when the petitioner pleaded guilty before the statute's enactment, absent proof that Congress intended such an application. *St. Cyr*, 533 U.S. at 320, 326. Neither case addresses the burden of proof for a noncitizen like Mr. Varelas Martinez who has been detained during removal proceedings pursuant to a warrant.

The record contains a warrant for Mr. Varela Martinez that was issued by an immigration official on November 5, 2025—the date of his arrest—as well as records reflecting that agents were looking for him, specifically in a targeted operation on that date. These records further state that the "administrative arrest documented in this Record of Deportable/Inadmissible Alien, Form I-213, was effectuated pursuant to a Warrant for Arrest, Form I-200, signed prior to the arrest." They also reflect that the warrant was served on him on November 5, 2025.

Mr. Varela Martinez argues that, because there is no time on the warrant, the Warden cannot prove it was issued before his arrest. In his view, the fact that the warrant was issued on the same day as his arrest "raises serious questions regarding whether a valid warrant existed at the time of the vehicle stop and seizure." The court will not parse these issues out based on mere speculation when the record tends to substantiate a warrant, and a timely one. Mr. Varela Martinez does not offer any evidence to suggest the warrant was obtained later, nor is there anything inherently unusual about the warrant. His mere supposition is insufficient to undercut the presumption of regularity that attaches to these documents. *See*

6

*United States v. Zuniga*, 767 F.3d 712, 720 (7th Cir. 2014) ("Under the presumption of regularity doctrine, we will presume that public officers will properly carry out their official duties, so long as there is no evidence to the contrary."); *Butler v. Principi*, 244 F.3d 1337, 1340 (Fed. Cir. 2001) ("The 'presumption of regularity' supports official acts of public officers. In the absence of clear evidence to the contrary, the doctrine presumes that public officers have properly discharged their official duties. . . . The doctrine thus allows courts to presume that what appears regular is regular, the burden shifting to the attacker to show the contrary.") (citations omitted).

Based on the record, the court concludes that Mr. Varela Martinez's detention is governed by § 1226(a). By statute, a noncitizen detained pursuant to a warrant may be released by the Attorney General (subject to certain statutory limitations that no one argues apply here), or he may be detained pending a decision on whether he will be removed from the United States. *See* 8 U.S.C. §§ 1226(a), (c). The court observes that our high court likewise has recognized the permissive nature of this language. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 526-27 (2021); *Jennings*, 583 U.S. at 306.

The Attorney General has delegated her discretion by regulation—first, to specified immigration officers who may "release an alien not described in [§ 1226(c)(1) (regarding criminal aliens)], under [bond or conditional parole]; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8). That is called an initial custody determination. After that initial custody determination, a noncitizen may apply to an immigration judge for a custody

7

redetermination, and the immigration judge is authorized to exercise the authority in § 1226 "to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released." 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1); *see also* 8 C.F.R. § 1003.19 (detailing procedures for custody or bond redeterminations by an immigration judge). When a noncitizen files this motion, an immigration judge, under immigration court rules, must "in general" schedule a "hearing for the earliest possible date," though in "limited circumstances" the immigration judge may rule on a bond redetermination request without a hearing. Immig. Ct. Practice Manual § 9.3(d). A noncitizen may appeal a decision relating to bond and custody determinations to the Board of Immigration Appeals. 8 C.F.R. §§ 236.1(d)(3), 1236.1(d)(3).

The court has oft said, and perhaps by now has said in ruling on nearly every habeas corpus petition of many immigration matters that have come before it—the parties, both noncitizens and the government alike, must comply with the laws that exist, as written and as they must work within the demands of constitutional due process. *See, e.g., Zadvydas*, 533 U.S. at 701; *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954). The government has predetermined the procedures that apply to noncitizens who are arrested and detained under § 1226, and due process requires merely that they be fairly given, not taken away. *See Accardi*, 347 U.S. at 266-68; *see, e.g., Jideonwo v. I.N.S.*, 224 F.3d 692, 697 (7th Cir. 2000). The seeds of this understanding rest "in the long-settled principle that the rules promulgated by a federal agency, which regulate the rights and interests of others, are controlling upon the agency." *Montilla v. I.N.S.*, 926 F.2d 162, 166 (2d Cir. 1991).

Mr. Varela Martinez is entitled only to process consistent with his classification under § 1226(a). The government has decided what that process is by regulation, and Mr. Varela Martinez gives no reason to believe that this process is undue or otherwise insufficient. The court will order no more and no less than what is expected of immigration officials by law. *See Accardi*, 347 U.S. at 268; *see also United States v. Nixon*, 418 U.S. 683, 696 (1974) ("So long as this regulation [delegating Attorney General's discretion to a Special Prosecutor] remains in force the Executive Branch is bound by it, and indeed the United States as the sovereign composed of the three branches is bound to respect and to enforce it.").

It seems Mr. Varela Martinez filed a motion for a custody redetermination, else the court would leave him to that task. He was denied a custody redetermination, either on the papers or via an individualized bond hearing, because the immigration judge found that he was statutorily ineligible for bond under § 1225(b)(2). The good judge was following BIA guidance, but erroneous guidance as it turns out. Although Mr. Varela Martinez presses for outright release, that exceeds what would be a reasonable remedy on this record. After all, "Congress may make rules as to [noncitizens] that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 522 (2003); *see also Reno v. Flores*, 507 U.S. 292, 305-06 (1993). Though the Fifth Amendment entitles noncitizens to due process of law in deportation proceedings, "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." *Demore*, 538 U.S. at 523; *see also Wong Wing v. United States*, 163 U.S. 228, 235 (1896). Instead, the court expects the government to follow its procedures laid out in the law appreciating that Mr. Varela Martinez has been detained pursuant to a warrant issued by an immigration official under § 1226. It is for the Attorney

9

General, through the individuals delegated her authority, to decide whether release is warranted under the circumstances. *See Bolante v. Keisler*, 506 F.3d 618, 620-21 (7th Cir. 2007) (federal court's inherent authority to release individuals seeking habeas corpus relief is curtailed by statutory structure that applies in immigration cases).

Some courts, including some in this circuit, have ordered a bond hearing. Perhaps in these other matters the petitioner explained why a custody redetermination, under procedures that already exist, would not be fair and sufficient process, or perhaps the petitioner gave some other salient reason, or perhaps the parties merely treated a customary bond hearing as shorthand for a custody redetermination. But the statute doesn't require a hearing. The regulations (insofar as the parties have provided them to the court this time) don't require it. Even the rules that govern redetermination proceedings before the immigration judge seem to afford that judge some ability to decide whether a hearing is necessary, though a custody redetermination must be given.

So, though the court agrees that detention under § 1226(a) without an opportunity to seek release under the procedures specified in the regulations—what the government has determined to be fair—would be unlawful, *see Accardi*, 347 U.S. at 265, the court leaves it to the Attorney General to follow that process, including to decide whether to release Mr. Varela Martinez or to proceed differently. Only if the Attorney General, acting through her designated officials, chooses to do nothing or fails to afford that process governing § 1226(a) proceedings must Mr. Varela Martinez be released. *See Wilkinson v. Dotson*, 544 U.S. 74, 87 (2005) (Scalia, J., concurring) ("Conditional writs enable habeas courts to give [authorities]

time to replace an invalid judgment with a valid one, and the consequence when they fail to do so is always release.").

Mr. Varela Martinez requests that the government be ordered to act within seven days. An immigration judge conducts a custody redetermination already at the earliest possible date, so perhaps there is something prophylactic in this request for a precise timeline. At the same time, nothing in that strikes as too restrictive for a custody redetermination in light of the finding that Mr. Varela Martinez falls under § 1226, particularly when he has not been given this process to date based on the mistaken view that he falls under § 1225(b)(2). Even busy federal magistrate judges conduct detention hearings, given their heavy criminal and civil dockets, in less time. And that timeline fits well within other federal habeas corpus decisions.

For these reasons, the court:

(1) DISMISSES Pamela Bondi, Attorney General of the United States; Kristi Noem, Secretary of the United States Department of Homeland Security; and Todd M. Lyons, Acting Director of United States Immigration and Customs Enforcement, as respondents;

(2) DENIES the petition (ECF 1), except to FIND that Elmer Ariel Varela Martinez must be classified under 8 U.S.C. § 1226(a) and to CONDITIONALLY ORDER the Warden to release Elmer Ariel Varela Martinez by February 13, 2026, only if he remains detained without a custody redetermination before an immigration judge in accordance with 8 U.S.C. § 1226(a) and corresponding regulations by February 13, 2026 at 5:00 pm ET;

(3) DIRECTS the clerk to email forthwith a copy of this order to the Warden of the Miami Correctional Facility at the Indiana Department of Correction to secure compliance

with this order, noting it will otherwise be electronically provided to the United States Attorney's Office for the Northern District of Indiana; and,

(4) ORDERS the Warden to file proof of compliance with this order, either to indicate that the custody redetermination process has been completed or the petitioner released, by February 13, 2026.

SO ORDERED.

February 6, 2026                                     *s/ Damon R. Leichty*
                                                     Judge, United States District Court